UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        -against-

JOHN PORTER,

        Defendant.

96 CR 515 (LAP)

ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant John Porter's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion"), (dkt. no. 743), the Government's opposition, (dkt. no. 748), and Defendant's reply, (dkt. no. 763). For the reasons set forth below, the motion is denied.

### I. Factual Background

#### a. Underlying Conduct, Conviction and Sentence

    The Defendant was a founding member of a group known as the "Preacher Crew" or the "Family," a criminal organization run by Clarence Heatley ("Heatley"), whose members and associates engaged in murder, assault, extortion, other acts of violence, and narcotics trafficking, primarily in Harlem and the Bronx from in or about 1983 to in or about 1996. (See Presentence Investigation Report, dated June 15, 1999 ("PSR"), Ex. A to dkt. no. 748, ¶¶ 23-24, 29.) The Defendant was involved with several murders, an armed robbery, and narcotics distribution, among other activities. (See

id. ¶¶ 29-35.) Specifically, as set forth in the PSR, the Defendant participated in the following:

- In or about July 1991, the Defendant, while armed with a gun, and other Preacher Crew members, stole approximately $119,000 from a department store in Queens, during which they threatened to kill store employees. (See id. ¶ 33.) They also kidnapped the store manager, taking him away from the store in his own car, before releasing him when they arrived in the Bronx. (See id.; see also Mar. 26, 1999, Plea Hrg. Tr. ("Tr.") at 17:9-19:6, Ex. B to dkt. no. 748.)

- In or about January 1994, the Defendant, Heatley, and another Preacher Crew member, Derrick Hailstock ("Hailstock") agreed to murder Hayward Shine ("Shine") after the Defendant informed Heatley that Shine planned to rob Hailstock's stash house and kill Hailstock's girlfriend. (See PSR ¶ 34.) After the Defendant lured Shine to a particular location, a struggle ensued, and Shine was shot and stabbed. (See id.; see also Tr. at 19:8-20:13.)

- In or about March 1994, the Defendant was an accessory after the fact to the murder of another Preacher Crew member named Anthony Boatwright ("Boatwright"). The

- Defendant helped discard Boatwright's dismembered body parts. (See PSR ¶ 31.)

- In or about June 1994, at another Preacher Crew member's direction, the Defendant drove around a Preacher Crew member who had been designated to kill another member named James Brunson ("Brunson"), so that the Defendant could point out Brunson to the shooter. (See id. ¶ 35.) The shooter later shot and killed Brunson and another victim in Manhattan. (See id.; see also Tr. at 15:13-16:25.)

The Defendant, and others, were charged in Superseding Indictment S11 96 Cr. 515 with conspiring to and engaging in a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) and (d); conspiring to and committing violent crimes in aid of a racketeering enterprise, including murder in aid of racketeering (e.g., Counts 29 and 30), in violation of 18 U.S.C. § 1959(a)(1) and (5); and firearms and accessory charges in association with the racketeering charges. (See Superseding Indictment S11 96 Cr. 515, Ex. C to dkt. no. 748.)

On March 26, 1999, the Defendant pled guilty before the Honorable Michael B. Mukasey, pursuant to a plea agreement, to Superseding Information S17 96 Cr. 515, charging him with the following crimes: (i) one count of conspiracy to commit murder in aid of racketeering, for the murder of Brunson, in violation of 18

3

U.S.C. § 1959(a)(5) ("Count One"); (ii) one count of threatening to commit an act of violence in aid of racketeering, for threatening to kill employees during the department store robbery, in violation of 18 U.S.C. § 1959(a)(4) ("Count Two"); and (iii) two counts of using and carrying a firearm during in relation to crimes of violence, during the department store robbery and during the murder of Hayward Shine, in violation of 18 U.S.C. §§ 924(c) and 2 ("Count Three" and "Count Four," respectively). (See Superseding Information S17 96 Cr. 515, Dkt. 420, Ex. D to dkt. no. 748; Tr. at 8:3-9:4.)

At the Defendant's sentencing hearing on June 23, 1999, Judge Mukasey imposed a total sentence of 480 months imprisonment: 120 months on Count One; 60 months on Counts Two, 60 months on Count Three; and 240 months on Count Four, each of which ran consecutively to one another. (See June 23, 1999, Judgment, dkt. no. 467, Ex. E to dkt. no. 748.)

Prior to his conviction in the instant case, the Defendant's criminal convictions included a 1970 attempted robbery at gunpoint in Manhattan; a 1976 robbery at gunpoint in Manhattan, during which the Defendant fired a shot at an arresting officer but missed; and a 1989 murder in Manhattan, after he accepted a contract to murder a victim and then directed a co-defendant, Boatwright, to murder that individual. (See PSR ¶¶ 82-91.)

4

**b. Compassionate Release Motion**

On October 28, 2022, the Defendant filed this Motion, seeking a reduced sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

First, the Defendant argues in his motion and on reply that his sentence should be reduced because the § 924(c) counts in his case were "stacked" (i.e., he was subject to mandatory consecutive sentences for "second or successive" § 924(c) convictions in the same case in which the first conviction was obtained), a practice which has since been eliminated by Congress. (See dkt. no. 743 ["Mot."] at 1-3.) In 2018, Congress passed the First Step Act, which, among other things, amended the "stacking" provisions of Section 924(c)(1)(C) that provide enhanced penalties for "second or subsequent" firearm convictions. At the time of the Defendant's sentencing, the statute mandated a twenty-year consecutive sentence for any second or subsequent conviction under Section 924(c). Under the First Step Act, however, an enhanced sentence is only mandatory for such convictions after the prior conviction under Section 924(c) has "become final." 18 U.S.C. § 924(c)(1)(C)(ii), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Congress did not make the amended stacking provision retroactive.

Based on the foregoing, the Defendant argues that if he were sentenced today, he would be subject to a maximum possible sentence of thirty-two years rather than forty years. (See Mot. at 4-5.) In

5

other words, today, he would face a mandatory, consecutive term of seven years for brandishing a firearm in connection with Count Three and a mandatory, consecutive term of ten years for discharging a weapon in connection with Count Four, rather than the mandatory, consecutive term of five years which was imposed on Count Three and the mandatory, consecutive term of twenty years which was imposed on Count Four when he was sentenced.

Additionally, the Defendant argues that, considered in combination with the "stacking" argument, his post-sentence rehabilitation and the difficult conditions of confinement during the COVID-19 pandemic warrant a sentence reduction. (See id. at 6-7.) Finally, the Defendant asserts that the § 3553(a) factors favor a sentence reduction, principally because the Defendant himself did not commit a violent act, at apparently 70 years old he is no longer a danger to the community, and he has strong family connections. (Id. at 7.)

According to the Defendant's Motion, the Warden of USP Victorville denied the Defendant's March 2021 administrative request for immediate transfer to home confinement or compassionate release and a reduction of his sentence. (See id. at 2 n.5.)

## II. **Applicable Law**

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. See 18 U.S.C. § 3582(c). One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." Id. § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons ("BOP") or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id.

Where a defendant has exhausted his administrative remedies, he may file a motion with the district court. See id. Under § 3582(c)(1)(A), the district court may modify the defendant's sentence and "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." Id.

7

The Court of Appeals has held that the First Step Act of 2018 "allows [district] courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling'" and that the BOP Director is no longer the sole arbiter in determining whether the threshold is met. See United States v. Brooker, 976 F.3d 228, 234, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Courts may "look[ ] to § 1B1.13 for guidance in the exercise of [their] discretion, but [are] free to consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Rodriguez, 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020) (quoting Brooker, 976 F.3d at 237).

Section 1B1.13 of the United States Sentencing Guidelines Manuel provides that the Court may, after considering the § 3553(a) factors, reduce an imprisonment term if "extraordinary and compelling reasons warrant the reduction," U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13(a)(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(a)(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(a)(3). As relevant here, § 1B1.13(b) provides that

8

"extraordinary and compelling reasons" are present where the defendant suffers from or is at risk of suffering from a serious medical condition, must tend to the care of an immediate family member incapable of self-care, has been the victim of abuse during his or her term of imprisonment, would serve a grossly disparate sentence absent a reduction in sentence, or presents a separate circumstance similar in gravity to those listed above.  See id. § 1B1.13(b).[1]

As the moving party, the Defendant bears the burden of proving that "extraordinary and compelling reasons" exist. United States v. Gotti, 433 F. Supp.3d 613, 619 (S.D.N.Y. 2020); see generally United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Clarke, 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same).

Whether such "extraordinary and compelling reasons" exist is only "[t]he threshold question," however. United States v. Daugerdas, 09 Cr. 581 (WHP), 613 F. Supp. 3d 807, 809-10 (S.D.N.Y. 2020). "[T]his Court's analysis does not end with a finding that 'compelling and extraordinary reasons' warrant compassionate

---

[1] In his briefing, the Defendant did not argue that he meets the criteria such criteria and he does not.

release. This Court must also 'consider[] the factors set forth in section 3553(a).'" Id. at 811 (quoting 18 U.S.C. § 3582(c)(1)(A)).

## III. Discussion

The Government agrees that the Defendant has exhausted his administrative remedies, in light of the denial of his March 2021 request for compassionate release by the Warden at USP Victorville. (See Mot. at 2 n.5.)

The Defendant has not demonstrated extraordinary and compelling circumstances that would warrant a sentencing reduction, and the factors set forth in 18 U.S.C. § 3553(a) also weigh against reducing his sentence. Accordingly, the motion is denied

### a. The Defendant Has Not Met His Burden to Show Compelling and Extraordinary Circumstances

The factors raised by the Defendant do not rise to the level of extraordinary and compelling circumstances, either standing alone or considered in combination.

#### 1. "Stacking" of Section 924(c) Counts

The length of the Defendant's sentence and the non-retroactive changes to Section 924(c) under the First Step Act do not constitute extraordinary and compelling reasons for a sentence reduction in this case.

The Government agrees with the defense that, (i) with respect to Counts Three and Four, if the Defendant were sentenced today, the Court would be required to impose a mandatory consecutive

10

sentence of seventeen years on Counts Three and Four rather than the twenty-five year mandatory consecutive sentence that he received on those counts in 1999; and (ii) therefore, on Counts One through Four, his maximum possible sentencing exposure today would be thirty-two years rather than forty years imprisonment. (See dkt. no. 748 at 5.) The Defendant's sentencing range of 360 months to life was capped by statute at forty years imprisonment. (See PSR ¶ 7(g)). The Defendant was sentenced before United States v. Booker, 543 U.S. 220 (2005) was decided.

While this Court may consider the First Step Act's anti-stacking provision in considering a compassionate release motion, in this case, the change in law does not militate in favor of reducing this Defendant's sentence and the Defendant should not be permitted to make an end-run around the provision's non-retroactivity. The Court of Appeals has found that a district court "may look to, but is not bound by, the mandatory minimums the defendant would face if being sentenced for the first time under revised guidelines or statutes." United States v. Rose, 837 F. App'x 72, 73-74 (2d Cir. 2021) (summary order). Here, the eight-year differential in pre- and post-FSA sentences is not as "radically different" as some other cases where courts granted a reduction in sentence based on the amended "stacking" provision. United States v. Castillo, 03 Cr. 979 (KMW), 2021 WL 268638, at *3 (S.D.N.Y. Jan. 27, 2021); see United States v. Bryant, 2020 WL 2085471, at *3 (D. Md. Apr. 30,

11

2020), aff'd sub nom. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020) (granting a reduction because, if the defendant were sentenced today, "his three § 924(c) convictions would result in a sentence enhancement of 15 rather than 45 years"); United States v. Redd, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020) (describing a "gross disparity" between a sentence that would be imposed pursuant to the First Step Act and a sentence that was "30 years, or three times longer, than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct"). Accordingly, the Court is not persuaded that the amended "stacking" provision merits release.

### 2. Rehabilitation

The Court acknowledges that under controlling Second Circuit case law "'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason [justifying compassionate release].'" Brooker, 976 F.3d at 238 (quoting 28 U.S.C. § 994(t)) (emphasis in Brooker); United States v. Plaskett, 11 Cr. 184 (DLC), 2022 WL 268975, at *1 (S.D.N.Y. Jan. 28, 2022) (same); 28 U.S.C. § 994(t).

The Defendant's proffered rehabilitation consists of "tak[ing] all the programming available to him, including drug and vocational rehabilitation programs," "obtain[ing] his GED," and "secur[ing] work assignments," including "in the kitchen and library." (Mot. at 6.) The Defendant's efforts to work and to take advantage of

educational opportunities in prison, while laudable, are not extraordinary. See, e.g., United States v. Tisdale, 15 Cr. 334 (RA), 2022 WL 16951307, at *3 (S.D.N.Y. Nov. 15, 2022) ("While the Court is pleased to hear of Mr. Tisdale's continued personal growth and rehabilitation, the Court is not persuaded that such progress warrants an early release."); United States v. Morales, 10 Cr. 392 (CS), 2021 WL 3038650, at *2 (S.D.N.Y. July 14, 2021) ("Making good use of one's time and obeying the rules in prison is not uncommon, and indeed is expected."). Thus, the Defendant's purported rehabilitation does not support a finding that the Defendant has met his burden to demonstrate extraordinary and compelling circumstances.

### 3. The Conditions of Confinement During the COVID-19 Pandemic

The Defendant argues that his sentence should be reduced due to difficult conditions of confinement, including hardships imposed by the COVID-19 pandemic and the risks the Defendant continues to face. (See Mot. at 6-7.) But he does not assert that any medical conditions distinguishing him from other inmates heightens his risk of COVID-19 so as to justify a grant of compassionate release. See United States v. Haney, 454 F. Supp. 3d 316, 322-24 (S.D.N.Y. 2020) (denying release to a defendant with history of substance abuse who did not suffer from other health conditions that made him unusually vulnerable to COVID-19 and who was 61 years old).

13

The Defendant describes having contracted COVID-19 twice but apparently fully recovered. (See Mot. at 6.) If anything, this fact weighs against granting his Motion. See, e.g., United States v. Perez, 04 Cr. 937 (NRB), 2020 WL 4677586, at *1 (S.D.N.Y. Aug. 11, 2020) ("While it is unfortunate that defendant suffered from COVID-19 while in custody, contraction of a disease generally does not constitute an extraordinary and compelling basis for release. The fact that defendant recovered from COVID19 further supports this conclusion.").

With respect to the other hardships resulting from being incarcerated in recent years, such as repeated lockdowns, these problems are not unique to this Defendant and do not justify a reduction in sentence. See, e.g., United States v. Cardenas, 17 Cr. 339 (AJN), 2021 WL 3722761, at *3 (S.D.N.Y. Aug. 23, 2021) (explaining "restrictions on visitation or other pandemic-related measures taken by prisons will not amount to extraordinary circumstances for most defendants who have recovered from or been vaccinated against COVID-19"); United States v. Bryant, 06 Cr. 17 (LTS), 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (finding that severe conditions of confinement during the pandemic are "not unique to Mr. Bryant and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction"); United States v. LaBarca, 11 Cr. 12 (RMB), 2021 WL 195996, at *4 (S.D.N.Y. Jan. 20, 2021) (denying

compassionate release request based on restrictive COVID-related prison conditions that are "true for all prisoners").

For these reasons, the Defendant's arguments regarding the COVID-19 pandemic and the resulting conditions of confinement are unavailing.

### b. The Section 3553(a) Factors Counsel Against a Sentence Reduction

Even if the Defendant had established extraordinary and compelling circumstances, which he has not, the §3553(a) factors counsel against release. United States v. Israel, 05 Cr. 1039 (CM), 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019) (explaining that court confronted with compassionate release motion must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances").

The Defendant highlights, among other things, that he did not plead guilty personally to committing a violent act, that he was in Criminal History Category II, his remorse, and his personal growth. (See Mot. at 7.)  But the Defendant's offenses are some of the most serious possible. See 18 U.S.C. § 3553(a)(1), (a)(2)(A). The Defendant was a founding member of a violent criminal organization that operated in New York City for more than a decade.

15

(See dkt. no. 748 at 9.) Even if the Defendant did not pull the trigger or stab a victim, the Defendant was a willing participant in some of the most serious crimes imaginable—including purposefully luring Shine to his death, pointing out Brunson so he could be murdered, committing an armed robbery of a department store, helping to discard Boatwright's body after he was murdered, and narcotics distribution. And these crimes were not crimes of youth—the Defendant was in his late thirties and early forties when he committed the crimes to which he pled.

The Defendant's criminal record includes an attempted armed robbery, an armed robbery during which the Defendant shot at a police officer, and a murder conviction for accepting a murder contract and directing another person to murder a victim. These crimes further weigh against early release. While the Court commends the Defendant on his educational accomplishments and his relationships with his family, these characteristics are not enough to outweigh the Defendant's grave crimes.

In light of the Defendant's criminal past, there is every reason to believe that he would pose a danger to the safety of the community if released. Id. § 3553(a)(2)(C). And, just punishment for the Defendant's heinous crimes demands a forty-year sentence.

## IV. **Conclusion**

For the foregoing reasons, the Defendant's motion to reduce his sentence pursuant to U.S.C. § 3582(c)(1)(A), (dkt. no. 743), is denied.

**SO ORDERED.**

Dated:   New York, New York
         May 14, 2024

_____
LORETTA A. PRESKA
Senior United States District Judge